C.W. v N.W. (2024 NY Slip Op 51101(U))

[*1]

C.W. v N.W.

2024 NY Slip Op 51101(U)

Decided on August 21, 2024

Supreme Court, Kings County

Sunshine, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 21, 2024
Supreme Court, Kings County

C.W., Plaintiff,

against
N.W., Defendant.

Index No. REDACTED

Ira E. Garr, Esq.
Attorney for Plaintiff
L.W.
Article 81 Co-Guardian of the Property and Guardian of the Person for Defendant
Theodore Alatsas, Esq.
Special Guardian

Jeffrey S. Sunshine, J.

Plaintiff seeks counsel fees for post-judgment enforcement pursuant to DRL 238 and a money judgment with interest for her share of equitable distribution awarded in the decision after trial which was incorporated in the judgment of divorce that is, inter alia, the subject of the enforcement proceeding. The defendant appears by his adult daughter who was appointed the co-guardian of the property and guardian of the person after an Article 81 proceeding together with a special guardian, Theodore Alatsas, Esq.. Mr. Alatsas was previously appointed as receiver post-judgment on default in the matrimonial proceeding after defendant dissipated marital assets and ceased all communication with the court and plaintiff or her counsel.[FN1]
Procedural History
The parties were married for more than thirty-one (31) years: at the time of the trial in 2020, the plaintiff-wife was 70 years old and the defendant-husband was 77 years old. There were no children of the marriage but the defendant's daughter from a prior relationship lived with the parties. 
Pursuant to the decision after trial dated February 4, 2021, which was incorporated but not merged into the Judgment of Divorce, dated July 26, 2021 [NYSCEF #72], the Court awarded plaintiff inter alia $4,418,637 for her one half (50%) share of marital property defendant sold immediately prior to the commencement of the divorce action and attempted to secrete; one half (50%) of the net proceeds from the ultimate sale of the Marital Residence [*2](which was at one time also a funeral home); and additional credits and awards of other marital property as detailed in the Judgment of Divorce. The Court also ordered the defendant to pay plaintiff monthly maintenance in the sum of $7,500 continuing until such time as defendant complied with "any and all transfers and payments as detailed in the Court's decision after trial dated February 4, 2021".

 Post-Judgment Litigation
In October 2021, plaintiff filed a post-judgment order to show cause seeking, inter alia, to enforce the judgment of divorce related to defendant's obligations including authorizing the receiver, who had been appointed by written order during the divorce action to preserve marital assets after defendant began dissipating them, to place the marital residence on the market for sale. Based on plaintiff's application and the defendant's failure to appear or oppose the application, the plaintiff's attorney was granted permission to file a Notice of Pendency (NYSCEF #7) and the Court ultimately granted the application for the receiver to place the marital residence on the market for sale (NYSCEF #13); however, defendant refused to permit the Receiver access to the property. In August 2022, the Receiver filed an order to show cause seeking, inter alia, the right to access the property and to change the locks and to direct the Sheriff of the City of New York to assist (NYSCEF #20). That application was granted by written order dated November 14, 2022 [NYSCEF #24].
The Court, seeking to ensure the safety of the defendant, receiver, and law enforcement involved, directed the Receiver to post to the property a copy of the order with notice of intent to enter "at least 3 days prior to the date of entering the premises specifying the date and time of entering the premises, which date and time shall be during daytime, daylight business hours during a business day" and that "no action may be taken related to this order until five business days have elapsed after service" [NYSCEF #24]. 
In February 2023, the Receiver filed another order to show cause seeking inter alia a writ of assistance pursuant to RPAPL 221 for the Sheriff of the City of New York to remove the defendant from the marital residence and granted the Receiver a Judgment of Possession [NYSCEF #29]. The Receiver represented to the Court that the defendant continued to refuse access to the property and had, in effect, barricaded the home and made additional security enhancements while indicating to the Receiver that the home will not be sold (see written order dated March 15, 2023; NYSCEF #43). Based upon this representation, the Court took additional measures attempting to ensure the safety of the defendant, the Receiver, and the Sheriff by directing New York City Adult Protective Services "to assist and assess the safety and well-being of the Defendant so that, if granted, the writ can be safely executed in the presence of NYC-APS" [NYSCEF #43].[FN2]

Based on the history of the case, the information provided, and in an abundance of caution, the Court appointed Charles Emma, Esq. as defendant's guardian ad litem pursuant to CPLR Article 12 by written order and the Court immediately stayed the writ of assistance and possession by its own motion by written order dated January 25, 2024 [NYSCEF #107] and directed that the court-appointed receiver FORTHWITH serve a copy of that order on the Sheriff of the City of New York. In his capacity as the guardian ad litem, Mr. Emma sought authorization to file an Article 81 proceeding which this Court granted by written order dated February 9, 2024 [NYSCEF #109]. That Article 81 proceeding was returnable before this Court [*3]in which Mr. Emma sought appointment of a guardian of the person and/or property for defendant. Shortly thereafter, the defendant's adult daughter from a prior relationship appeared and notified the Court that the defendant had been, as of January 2024, confined to and receiving treatment at a VA Hospital.
Mr. Emma's application in the Guardianship proceeding was granted after appointment of a court-appointed counsel for defendant and a court-appointed evaluator and a hearing before this Court in compliance with Article 81. The court-appointed evaluator represented that the defendant's mental condition did not permit him to participate in the proceeding and requested that his attendance at the hearing be dispensed with as he "is unable to meaningfully participate " (see Report of Court Evaluator dated May 3, 2024). Pursuant to the order of guardianship, the defendant's adult daughter, L.W., was appointed as co-guardian of the property and guardian of the person.
Throughout these complete and protracted proceedings the plaintiff has had to continue to appear through counsel seeking to enforce the Judgment of Divorce and protect the assets and, she represents, she has incurred considerable post-judgment enforcement counsel fees pursuant to DRL 238.
Counsel Fees: Enforcement Pursuant to DRL 238
On March Plaintiff filed a post-judgment order to show cause [NYSCEF #119] seeking the following relief:
1. Pursuant to Domestic Relations Law § 238, granting Plaintiff a counsel fee award in the sum of $155,000.00, payable by Defendant from the sums held by the Court-Appointed Receiver, Theodore Alatsas, Esq. or in the alternative, from Defendant's two investment accounts at First Republic Bank (now JPMorgan Chase); and
2. Granting Plaintiff such and other further relief as the Court deems just and proper.
In his affirmation in support, plaintiff's counsel contends that " Plaintiff has been forced to wait almost three years since the Judgment of Divorce was entered, incurring very substantial counsel fees. These fees would not have been necessary if not for Defendant's willful defaults of his obligations under the Judgment or his obstructive conduct" [NYSCEF #112]. He further contends that "[u]ntil such time that Plaintiff receives her equitable distribution under the Judgment, our services will be required" [NYSCEF #112]. Plaintiff contends that she is entitled to more than $8,000,000 in equitable distribution due under the judgment of divorce and that she has received nothing because defendant refused to cooperate with the judgment of divorce.
It is undisputed that defendant never complied with any aspect of the decision after trial or the judgment of divorce and that in March 2023, plaintiff's counsel moved by order to show cause seeking an order of the Court directing the Receiver to take possession of and maintain any and all of Defendant's personal financial accounts and any and all of the Defendant's now closed business bank and financial accounts to preserve them and that the Receiver be authorized to utilize the funds on deposit to pay plaintiff the Court-ordered monthly support and support arrears pending further order of the Court. That application was granted by written order dated April 3, 2023 [NYSCEF #46]. The order provided defendant the right to file an application to access any funds on deposit with his financial institutions or in the possession of the Receiver for purposes of payment of his basic daily living expenses.
Plaintiff has incurred extensive counsel fees seeking to enforce the Judgment of Divorce based up defendant's failure to participate and/or cooperate in any way for years. Since that initial post-judgment order to show cause there has been extensive post-judgment enforcement litigation in this matter: however, despite extensive notice protocols designed to ensure that [*4]defendant had full knowledge and an opportunity to participate he did not appear or answered any of the post-judgment applications.
Plaintiff's counsel submitted billing records from September 2021 through March 2024 reflecting $100,850.80 in counsel fees and $42,021.81 in interest for a total of $142,872.61.[FN3]
Plaintiff's counsel annexed his retainer agreement with plaintiff which provides for an hourly rate of $850.00, which he notes in his affirmation in support is a reduced rate from his current hourly rate of $1,250.00, and interest of 12% on any unpaid balance [NYSCEF #116]. Plaintiff's counsel represented that the more than $40,000 in accrued interest was not compounded. Plaintiff's counsel seeks an award of all (100%) of the enforcement counsel fees—including the interest incurred pursuant to the terms of his retainer agreement with plaintiff—to be paid from defendant's share of the marital assets. The Guardian of the Person and Co-Guardian of the Property did not oppose Plaintiff's application for counsel fees incurred in this post-judgment application and said she wanted plaintiff's counsel to be paid and inquired about the amount of the bill.
The Court notes that here, while plaintiff is clearly entitled to counsel fees incurred for enforcement pursuant to DRL 238 there is no basis before the Court to extend the contractual obligation plaintiff undertook between herself and her attorney for interest on any counsel fee balance. DRL 238 does not require the Court to award interest on counsel fees incurred voluntarily by a party prior to application for counsel fees. 
Application for Retroactive Interest Prior to Date of Application
Here, the Court finds that it would not be a provident exercise of discretion to award prejudgment interest retroactively to the date when plaintiff started incurring post-judgment counsel fees but before she provided notice of same by seeking an award of counsel fees pursuant to DRL 238 especially where it is undisputed that for at least some duration of time, the delay in this enforcement which generated the accrual of interest resulted from defendant being incapacitated and the need for a guardianship proceeding. 
The Court declines to grant plaintiff's request for an additional award based upon the voluntary 12% interest she incurred pursuant to her retainer agreement retroactive, in effect, to the commencement of the post-judgment litigation. To hold as plaintiff requests would, in effect, be to hold defendant who is not a party to the contractual terms agreed upon between plaintiff and her counsel in the retainer agreement — retroactively financially liable for plaintiff's unilateral choice to enter that contract with 12% interest. Plaintiff and her counsel had the right to contract to such an interest rate between themselves; however, plaintiff cannot unilaterally bind defendant — a non-party to those contractual terms of 12% interest. This decision does not preclude plaintiff's counsel from seeking to collect any remaining interest on counsel fees pursuant to the terms of the retainer agreement between him and plaintiff. The court notes that during this post-judgment litigation plaintiff has paid her counsel $100,000.00 towards counsel fees in September 2023.
The Court has reviewed the billing records annex to plaintiff's application for services [*5]rendered by plaintiff's counsel in this post-judgment enforcement litigation and finds that they are reasonable and that the hourly rate is commensurate with the experience and services rendered by plaintiff's counsel. 
There is no doubt that plaintiff's counsel took all the steps necessary to enforce his client's rights and to protect her under very trying circumstances: plaintiff's request for counsel fees is granted pursuant to DRL 238 since defendant's non-compliance required plaintiff to seek enforcement of an award she was clearly entitled to under the judgment of divorce. The Court finds that under the facts and circumstances presented here, it is appropriate to award plaintiff counsel fees of $100,850.80 together with costs and statutory interest of 9% from the date of application to be paid from Defendant's share of equitable distribution [March 15, 2024; [NYSCEF #111][see Hofmann v Hofmann, 212 AD3d 462 [1 Dept.,2023][holding that statutory interest rate of 9% was presumptively fair and reasonable]].
Money Judgment for Equitable Distribution Award
In May 2024, plaintiff filed another post-judgment order to show cause [NYSCEF #128] seeking the following relief:
1. Granting Plaintiff a money judgment in the sum of $4,850,760.50 against Defendant, with interest; and
2. Directing that the money judgment be paid from Defendant's 50% share of the sale proceeds of the premises at REDACTED and all other assets in Defendant's name and in the name of REDACTED; or in the alternative, and
3. Amending the parties' July 26, 2021 Judgment of Divorce ("Judgment") to direct that Defendant's 50% shares of the sale proceeds of the premises at REDACTED and all other assets in Defendant's name and in the name of REDACTED be used to pay that portion of Plaintiff's equitable distribution that the assets cover, and
4. Amending the Judgment to include a decretal paragraph that shall order J.P. Morgan Chase Bank, NA and J.P. Morgan Chase Securities LLC to transfer title of the following accounts to Plaintiff's sole name as part of her equitable distribution ordered in the Judgment:
a. REDACTED Bank Account xxx185 in Defendant's name, and
b. REDACTED Bank Account xxx276 in the name of REDACTED, and
5. Granting Plaintiff such and other further relief as the Court deems just and proper.
Plaintiff's counsel contends that defendant's failure to comply with the judgment of divorce—whether by "passive and defiant conduct" or "unfortunate health changes" has prevented plaintiff from receiving her equitable distribution for over 2.5 years [NYSCEF #123]. Plaintiff's counsel contends that:
Defendant holed up in the former marital residence at REDACTED, defaulted on every court appearance and motion briefing since the March 2020 trial and informed the Court-appointed receiver ("Receiver") that he had no intention to comply with the Court's Judgment. The Court has provided every reasonable courtesy to Defendant.
Plaintiff contends that the marital residence is currently in contract for sale for $6,600,000.00 and that the Court should grant her a money judgment for the decipherable sums in the judgment of divorce totaling $4,850,760.50. 
Pursuant to the judgment of divorce, the plaintiff was awarded $4,418,637.36 representing her share of the proceeds of a marital property defendant unilaterally sold [*6]immediately prior to the commencement of the divorce action [FN4]
and another credit in the sum of $432,123.14 representing her share of marital bank accounts held by the defendant [NYSCEF #101] for a total of $4,850,760.50 for those two combined awards. Plaintiff contends that even once the marital residence is sold the defendant's share of the net proceeds of the sale will be insufficient to satisfy that sum. She seeks a money judgment for the full sum to collect against other financial investment accounts in defendant's name which are currently restrained by court order. She contends that with a money judgment the Receiver can be authorized to satisfy the judgments from those investment accounts. Plaintiff contends that given her age it is imperative that she have access to her full share of equitable distribution as soon as possible and that while she is empathetic to the health plight of defendant it has resulted in additional delays.
There was no opposition to the request for a judgment in the sum of $4,850,760.50 in favor of plaintiff to be paid out of defendant's share of the sale of the marital residence and his share of any other investment accounts in his name and there was a clear direction for defendant to convey this sum pursuant to the decision after trial which was incorporated but not merged into the judgment for divorce. As such, plaintiff application for a money judgment in the sum of $4,850,760.50 is granted together with statutory costs and interest from the date of first application [May 21, 2024; NYSCEF #122]. Plaintiff shall have the right to file, on notice, a money judgment together with costs and interest from the date of application [May 21, 2024; [NYSCEF #122] with the Office of the County Clerk with an affidavit as to defendant's non-payment without further application to the Court, unless payment is made within twenty-one (21) days of service with notice of entry of this decision and order.
Prejudgment Interest in Equitable Distribution
It is well-established that "[a]n award of prejudgment interest is within the sound discretion of the trial court (Pappas v Pappas, 140 AD3d 838, 840 [2 Dept.,2016]; see also generally Hoffman v Hoffman (212 AD3d 462 [1 Dept.2023]); however, whether to award prejudgment interest prior to the date of application for the money judgment is within the court's discretion (CPLR 5001; Savino v Savino, 218 AD3d 504 [2 Dept.,2023]). As relevant here, CPLR 5001(a) provides that "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion."
In Savino, the Appellate Division, Second Department upheld the trial court's determination as to whether to award prejudgment interest finding that "'[t]he exercise of the court's discretion in determining the appropriate interest is governed by the particular facts of each case'" (218 AD3d 504, 506, citing U.S. Bank, N.A. v Peralta, 191 AD3d 924, 926 [2 Detp.,2021]).
Here, there were extensive delays in enforcement of the equitable distribution award resulting from delays necessitated by defendant ultimately being found to be an incapacitated person and the need for an Article 12 appointment and subsequently to allow the Article 81 proceeding. The court notes that pursuant to the judgment of divorce the plaintiff, who is over seventy (70) years old continues to receive $7,500 monthly in maintenance from the defendant, [*7]who is now eighty (80) years old and those monthly support payment are to continue until such time as plaintiff receives her full equitable distribution. Thus, the court already considered the possibility that there may be a delay in enforcing the judgment of divorce inasmuch as defendant had not been cooperative with the process during the litigation. If the court were to award retroactive interest on the award of equitable distribution back to the date of the decision after trial or to the judgment of divorce in addition to this award of $7,500 monthly in support that is still in existence because to date the payment of equitable distribution has not been made, under the facts and circumstances, it would amount to a "double dip". In the decision after trial the Court noted that this support provision which would end once defendant complied with the equitable distribution award was intended to incentivize the defendant to cooperate with all transfers. Plaintiff has continued to collect that financial benefit for years during which time she elected not to seek a money judgment with interest for the sum now requested for more than three (3) years after the judgment of divorce was entered. The Court will not grant the application for prejudgment interest retroactive to the date of the judgment of divorce under the facts and circumstances but will award statutory interest back to the date of application [May 15, 2024]. 
Conclusion
Motion sequence #23 is granted to the extent.
Motion sequence #24 is granted to the extent.
Any relief not specifically granted herein is denied without prejudice.
This shall constitute the decision and order of the Court.
ENTER:
HON. JEFFREY S. SUNSHINE
J. S. C.

Footnotes

Footnote 1:Mr. Alatsas, Esq. is preparing his final accounting as receiver and will shortly be relieved as receiver.

Footnote 2:On July 20, 2023, Adult Protective Services notified the Receiver that defendant was "ineligible for protective services" who thereafter notified counsel and the court [NYSCEF #79].

Footnote 3:Plaintiff's counsel contends that the total outstanding balance is $154,995.70; however, from the billing records annexed it appears that there was an existing counsel fee balance due and owing from the prior divorce action prior to the initiation of enforcement proceedings and, as such, such counsel fees would not properly be part of an enforcement application pursuant to DRL 238. The billing records annexed by plaintiff's counsel for enforcement begin in September 2021 and the total principal and interest is $142,872.61.

Footnote 4:This property sold for $9,250,000 in December 2013 just weeks before plaintiff commenced the divorce but by September 2014 the defendant had dissipated the funds to just $2,777,196.11 and was unable or unwilling to account for where those funds went or how they were used but the Court found that "they were not used to pay any known marital liabilities" and awarded plaintiff a credit in the sum of 50% of the net proceeds of the sale which was $8,837,274.73 [see decision after trial dated February 4, 2021].